# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HOLLY BILLS and KRISTANY WILMOTH,

    Plaintiff,

v.

GENESEE HEALTH SYSTEM,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
614 Detroit St. STE 125
Ann Arbor, MI  48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiffs Holly Bills and Kristany Wilmoth ("Plaintiffs"), by and through her attorneys, HURWITZ LAW PLLC, state the following for her Complaint against Defendant Genesee Health System ("Defendant"):

1

## INTRODUCTION

1.     Plaintiffs were discriminated and retaliated against in violation of the Elliott-Larsen Civil Rights Act ("ELCRA") after being denied religious exemptions from Defendant's COVID-19 vaccine mandate.  On November 5, 2021, Defendant announced that staff, contractors, students, and volunteers were required to receive both doses of the COVID-19 vaccine dose by February 28, 2022—although patients and visitors were never required to be vaccinated.  Plaintiffs submitted religious accommodation requests in November 2021 and were denied exemption in February 2022 based on Defendant's purported "undue hardship."  What that undue hardship reason could be is a mystery, however, because Plaintiffs had been primarily remote employees at all times during the pandemic.  Plaintiffs had been completely remote since approximately March 1, 2020 until June 1, 2021, and only working in-person with zero patient contact once or twice a week from approximately June 1, 2021 until their terminations.  Defendant's Chief Executive Officer Danis Russell stated in an email to all staff members on June 27, 2022, regarding the overturning of *Roe v. Wade*, "I don't think anyone has a right to tell you what to do with your body."  Defendant had a double standard when it dictated what Plaintiff should do with their bodies contrary to their sincerely held religious beliefs.

2.     In addition, both Plaintiffs were misclassified as "exempt" from overtime pay requirements in violation of the Fair Labor Standards Act of 1938

("FLSA").  Ms. Bills was employed as an Administrative Assistant from her initial hiring on June 30, 2014 until her termination on February 28, 2022. Ms. Wilmoth was employed as an Administrative Assistant from March 2021 until her termination on February 28, 2022.  Their job duties consisted mainly of screening telephone calls, maintaining calendars, ordering supplies, and maintaining filing systems. Plaintiffs did not consistently exercise discretion and judgment, nor did they formulate or implement management policies, have authority to deviate from established policies, or handle any complaints or arbitrate disputes. Accordingly, Plaintiffs are entitled to overtime pay from three (3) years prior to the date of filing of this lawsuit until their terminations.

## PARTIES AND JURISDICTION

3. Plaintiff Bills is an individual residing in Lapeer, Michigan.

4. Plaintiff Wilmoth is an individual residing in Davison, Michigan.

5. Defendant is a county located in the Eastern District of Michigan.

6. The U.S. District Court for the Eastern District of Michigan has jurisdiction over the claim under the Fair Labor Standards Act of 1938 ("FLSA") pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the claims under the Elliott-Larsen Civil Rights Act ("ELCRA") pursuant to 28 U.S.C. § 1367.

7. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff Bills was employed as an Administrative Assistant from her initial hiring on June 30, 2014 until her termination on February 28, 2022.

9. Plaintiff Wilmoth was employed as an Administrative Assistant from March 2021 until her termination on February 28, 2022.

10. Plaintiffs were classified as "exempt" from overtime pay requirements, when their job duties primarily consist of the following: screening telephone calls, maintaining calendars, ordering supplies, and maintaining filing systems.

11. Plaintiffs were expected to work outside regular business hours.

12. Plaintiffs did not consistently exercise discretion and judgment.

13. Plaintiffs did not formulate or implement management policies.

14. Plaintiffs did not have authority to deviate from established policies.

15. Plaintiffs did not handle any complaints or arbitrate disputes.

16. Plaintiffs were forced to work on days where they took paid time off.

17. Plaintiffs were misclassified as "exempt" from overtime pay in violation of the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 207(a)(1).

18. Plaintiffs are therefore entitled to overtime pay in exact amounts to be determined over the course of discovery from three (3) years prior to the date of filing of this lawsuit until their terminations effective February 28, 2022.

**Defendant's Mandatory Vaccine Policy**

19.     Defendant announced on November 5, 2021 that staff, contractors, students, and volunteers were required to receive the first COVID-19 vaccine dose by January 27, 2022 and the second COVID-19 vaccine dose by February 28, 2022.

20.     Defendant never required patients or visitors to be vaccinated.

21.     Defendant listed several "pre-approved" accommodations in the announcement, including weekly testing as required and wearing a mask approved by the National Institute for Occupational Safety & Health ("NIOSH").

22.     Employees were to be notified within seven (7) business days of submission of their application for medical or religious exemption to the vaccine mandate "if it is approved or denied, and, if approved, of any restrictions or requirements they will be required to follow so long as they remain unvaccinated."

23.     Employees denied a medical or religious accommodation to the mandate were automatically placed on "layoff status" effective February 28, 2022.

24.     Employees denied accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices.

5

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

**Plaintiffs Religious Accommodation Requests**

25. Plaintiff Bills seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer and the Holy Bible.

26. Plaintiff Bills had been a completely remote employee since the pandemic began on approximately March 1, 2020 until approximately June 1, 2021.

27. Plaintiff Bills had been working in-person once or twice a week from approximately June 1, 2021 until her termination on February 28, 2022, where she had been assigned a private office, a private bathroom, and her own printer.

28. Plaintiff Bills requested accommodation on November 23, 2021:

> I have and always will follow my spiritual and religious path and not the one based on science or man . . . I also know and believe that God knows my beginning and end . . . I have been successfully able to perform my job duties and keep up on my responsibilities while working remote . . . I am able to complete my entire job remote, or in the office. I feel that I have proved myself working remote for the year . . . I also am willing to work in the office if or as needed wearing a mask . . . I do not share an office with others therefore I don't pose a risk to anyone.

29. The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986). However, no such "bilateral cooperation" occurred in this case.

30. The U.S. Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

31. Defendant moved forward with terminating employees who remained unvaccinated by February 28, 2022, even though approximately ninety-seven percent (97%) of staff members were vaccinated as of January 27, 2022.

32. Plaintiff Bills's accommodation request was denied in a letter authored by Director of Human Resources Sheila D. Mason dated February 10, 2022:

> GHS is in receipt of your request for a Religious Exemption from the CMS requirement that all employees be vaccinated against COVID-19. Our review of your request, and any supporting documentation, is complete and your request for an exemption is granted. You have also requested an accommodation that will allow you to work and perform your duties as an employee of GHS without being vaccinated for COVID-19. Be advised that due to the nature of your job responsibilities and the service requirements of GHS, your request for a work accommodation has been denied. Therefore, you are notified that you will be placed on layoff status . . . Your layoff will continue until either you are able to meet the vaccination requirement of CMS, or GHS determines that a suitable work accommodation is available.

7

33. Plaintiff Bills responded to Ms. Mason later that day: "I have received this and I am sad and disappointed . . . I don't see this as an accommodation issue at this point, I see this as an 'unwillingness' to accommodate because I don't have a vaccine . . . Can you please advise me further?" Ms. Mason failed to respond.

34. Plaintiff Bills filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 2, 2022.

35. Plaintiff Wilmoth also held sincere religious beliefs that precluded her from receiving the COVID-19 vaccination.

36. Plaintiff Wilmoth did not formally submit a religious accommodation request because she learned that Defendant would be denying all such requests and that any request would be futile.

37. Plaintiff Wilmoth attended meetings where it was announced that religious exemptions would not be granted.

38. Plaintiff Wilmoth was pregnant at the time of her termination.

39. Title VII does not require a person with a religious accommodation need to engage in a futile gesture of requesting an accommodation if such person has actual notice that a person or organization does not intend to comply." *Cf.* 42 U.S.C. § 12188(a)(2) (the law does not require "a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization does not intend to comply"); *Davoll v. Webb*, 194 F.3d 1116, 1133 (10th Cir. 1999) (employee not required to engage in "futile gesture" of requesting reasonable accommodation ); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("[employee] may have thought it was futile to ask, after [someone] told him that he would not receive any more special treatment.").

40. CEO Danis Russell hypocritically stated in an email to all staff members on June 27, 2022, regarding the overturning of *Roe v. Wade*, "I don't think anyone has a right to tell you what to do with your body."

41. Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

42. The U.S. Equal Employment Opportunity Commission ("EEOC")[1] advises employers to "ordinarily assume that an employee's request for religious

---

[1] Plaintiff Bills filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 2, 2022. Plaintiff Bills will be amending to add claims under Title VII of the Civil Rights Act of 1964 ("Title VII").

9

accommodation is based on sincerely held religious belief, practice, or observance." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

43. An individual's testimony about his or her belief "must be given great weight" and is enough to demonstrate a sincerity. *Seeger*, 380 U.S. at 184 (1965).

44. Plaintiff Bills' religious convictions are highlighted by the fact she remained unvaccinated until her termination, losing her livelihood in the process.

45. Defendant denied bonus compensation to employees who were not vaccinated.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

46. The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). The employer bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

47. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

48. Defendant appears to claim undue hardship when it denied her request due to her "job responsibilities," which consist of screening telephone calls, maintaining calendars, ordering supplies, and maintaining filing systems.

49. Plaintiffs can and has performed their job responsibilities from home.

50. Plaintiffs had been completely remote employees since the pandemic began on approximately March 1, 2020 until summer 2021.

51. Plaintiff Bills had been working in-person once or twice a week from approximately June 1, 2021 until her termination on February 28, 2022, where she had been assigned a private office, a private bathroom, and her own printer.

52. Defendant cannot allege undue hardship given the above facts.

53. Defendant cannot allege undue hardship when other employees performing similar job duties were granted medical accommodations to the vaccine.

54. Defendant cannot allege undue hardship when it listed several "pre-approved" accommodations, including weekly testing and wearing a mask approved by the National Institute for Occupational Safety & Health ("NIOSH").

## COUNT I
## Violation of Fair Labor Standards Act of 1938 ("FLSA")
## (Plaintiffs Bills and Wilmoth)

55. Plaintiffs restate the foregoing paragraphs as set forth herein.

56. Plaintiffs were "employees" or "individuals employed by an employer" under the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 203(e).

57. Defendant was an "enterprise engaged in commerce" during all relevant times under the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 203(s).

58. Plaintiff Bills was employed as an Administrative Assistant from her initial hiring on June 30, 2014 until her termination on February 28, 2022.

59. Plaintiff Wilmoth was employed as an Administrative Assistant from her initial hiring on February 27, 2017 until her termination on February 28, 2022.

60. Plaintiffs were classified as "exempt" from overtime pay, when their job duties primarily consist of the following: screening telephone calls, maintaining calendars, ordering supplies, and maintaining filing systems.

61. Plaintiffs did not consistently exercise discretion and judgment.

62. Plaintiffs did not formulate or implement management policies.

63. Plaintiffs did not have authority to deviate from established policies.

64. Plaintiffs did not handle any complaints or arbitrate disputes.

65. Plaintiffs were misclassified as "exempt" from overtime pay in violation of the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 207(a)(1).

66.     Defendant's actions were intentional and willful.

67.     Plaintiffs are entitled to overtime pay in exact amounts to be determined from three (3) years prior to the date of filing of this lawsuit until their terminations.

## COUNT II
### Violation of Elliott-Larsen Civil Rights Act ("ELCRA")
### Religious Discrimination–Failure to Accommodate
### (Plaintiffs Bills and Wilmoth)

68.     Plaintiffs restate the foregoing paragraphs as set forth herein.

69.     An employer shall not discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of the individual's religion. MCL 37.2202(1)(a).

70.     Plaintiffs can establish a *prima facie* case of discrimination by showing that (1) they hold a sincere religious belief that conflicts with an employment requirement; (2) they informed their employer of this belief; and (3) they suffered an adverse employment action for "failing to comply with the conflicting employment requirement." *Tepper v. Potter,* 505 F.3d 508, 514 (6th Cir. 2007).

71.     Plaintiffs hold sincere religious beliefs that conflict with the vaccine mandate that was initially announced on November 5, 2021.

72.     Plaintiff Bills informed her employer of her sincere religious belief when she requested a reasonable accommodation on November 23, 2021.

13

73. Plaintiff Wilmoth did not inform her employer of her sincere religious belief, but it was unnecessary for her to do so to . See, e.g., *EEOC v. Abercrombie & Fitch Stores*, 575 U.S. 768, 773 (2015) ("A request for accommodation, or the employer's certainty that the [religious] practice exists, may make it easier to infer motive, but is not a necessary condition of liability").

74. Plaintiffs suffered an adverse employment action when they were placed on "layoff status" effective February 28, 2022 for not receiving the vaccine.

75. Defendant evaded any sort of bilateral cooperation.

76. Plaintiffs should have been given the opportunity to continue telework.

77. Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of her request for accommodation.

78. Plaintiffs have been denied employment and placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the denial of her request.

79. Plaintiffs have been required to employ the services of an attorney.

80. Defendant's actions were intentional and/or reckless.

## COUNT III
## Violation of Elliott-Larsen Civil Rights Act ("ELCRA")
## Religious Discrimination–Retaliation
## (Plaintiff Bills)

81. Plaintiff Bills restate the foregoing paragraphs as set forth herein.

82. Two or more persons shall not conspire to, or an individual person shall not on his or her own, retaliate against a person because the person has opposed a violation of the Elliott-Larsen Civil Rights Act ("ELCRA"). MCL 37.2701(a).

83. Plaintiff Bills can establish a *prima facie* case of retaliation by showing (1) she engaged in a protected activity; (2) that this was known by the employer; (3) that the employer took an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019).

84. Plaintiff Bills engaged in protected activity when she requested a religious accommodation to the vaccine mandate on November 23, 2021.

85. Plaintiff Bills suffered an adverse employment action when she was placed on "layoff status" effective February 28, 2022 for failing to comply.

86. Plaintiff Bills has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct.

15

87. Plaintiff Bills has been denied employment and placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work because of the retaliatory conduct.

88. Plaintiff Bills have been required to employ the services of an attorney.

89. Defendant's actions were intentional and/or reckless.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Attorneys' fees and costs; and

e. Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiffs
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: August 1, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLY BILLS and KRISTANY WILMOTH,

      Plaintiff,

v.

GENESSEE HEALTH SYSTEM,

      Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

## DEMAND FOR TRIAL BY JURY

Plaintiffs, Holly Bills and Kristany Wilmoth, by and through their attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

      Respectfully Submitted,
      HURWITZ LAW PLLC

      */s/ Noah S. Hurwitz*
      Noah S. Hurwitz (P74063)
      *Attorney for Plaintiffs*

Dated: August 1, 2022